UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JENNIFER C.,                          )
                                      )
            Plaintiff                 )
                                      )
v.                                    )   No. 2:17-cv-00233-JAW
                                      )
NANCY A. BERRYHILL,                   )
Deputy Commissioner for Operations,   )
Performing the Duties and Functions   )
Not Reserved to the Commissioner      )
of Social Security,                   )
                                      )
            Defendant                 )

# REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) applied the wrong standard, the now-superseded Social Security Ruling 96-7p ("SSR 96-7p"), in assessing her testimony concerning the intensity, persistence, and limiting effects of her symptoms, and (ii) erroneously concluded that she had no medically-determinable impairment of fibromyalgia. *See* Itemized Statement of Specific Errors

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

("Statement of Errors") (ECF No. 17) at 4-9. I find no reversible error, and, accordingly, I recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 15; that she had the severe impairment of anxiety, Finding 3, *id.*; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with a limitation in her concentration, persistence, and pace with the ability to understand, remember, and carry out simple tasks, Finding 5, *id.* at 17; that, considering her age (45 years old, defined as an individual closely approaching advanced age, on her alleged disability onset date, January 1, 2009), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 23-24; and that she, therefore, had not been disabled from January 1, 2009, through the date of the decision, March 18, 2016, Finding 11, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Subjective Symptom Evaluation

The plaintiff testified that (i) she felt she was disabled as a result of her fibromyalgia and anxiety, the symptoms of which she stated left her "exhausted" after "just being out more than two or three hours," (ii) she could sit in one place for between 15 and 20 minutes or stand in one place for 20 or 25 minutes before having to move, (iii) she could lift between 10 and 15 pounds, (iv) she suffered from "constant" headaches on a daily basis and panic attacks roughly once per month, (v) her anxiety "always" made her feel nauseous and "like [she] ha[d] butterflies in [her] chest[,]"

and (vi) she had "constant" pain in her hands, forearms, and the front of her ankles. Record at 34, 39-40, 45, 47-49.

The ALJ articulated several reasons why she deemed the plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely credible[,]" *id*. at 19, including that (i) "her allegations [we]re not supported by the record[,]" which reflected "little change in her functional status[,]" (ii) "[s]he ha[d] . . . not followed medical advice regarding the appropriate use of medication, or counseling to address her mood issues[,]" (iii) she engaged in activities of daily living, including social interaction, that were inconsistent with her allegation that she suffered from disabling anxiety, and (iv) "she was not entirely forthcoming at the hearing when asked about substance abuse issues[,]" *id*. at 22-23.

The plaintiff contends that, in so doing, the ALJ wrongly applied SSR 96-7p instead of Social Security Ruling 16-3p ("SSR 16-3p"), which had taken effect on March 16, 2016, two days prior to the issuance of the ALJ's decision, superseding SSR 96-7p. *See* Statement of Errors at 4-7. She contends that neither the ALJ's individual findings nor her explanation for them passes muster pursuant to SSR 16-3p, warranting remand. *See id*.

The commissioner rejoins that, because she clarified on March 24, 2016, that the effective date of SSR 16-3p was March 28, 2016, the ALJ correctly applied SSR 96-7p. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 19) at 2; Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).[2] In the alternative, she argues that any error in applying SSR 96-7p was harmless. *See* Opposition at 2-12.

---

[2] The commissioner later republished SSR 16-3p in its entirety, in part to "include[] a revision to clarify that our adjudicators will apply SSR 16-3p when we make determinations and decisions on or after March 28, 2016." Social

4

The plaintiff is correct that the ALJ should have applied SSR 16-3p. The commissioner's regulations provide that:

> We publish Social Security Rulings in the Federal Register under the authority of the Commissioner of Social Security. They are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted.

20 C.F.R. § 402.35(b)(1). Because, as of March 18, 2016, the commissioner had not yet corrected the effective date of SSR 16-3p, the ALJ was bound as a "component[] of the Social Security Administration" to apply SSR 16-3p in evaluating the plaintiff's subjective symptoms. *Id.*; *see also* Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166, 14166-67 (Mar. 16, 2016) (setting forth effective date of March 16, 2016, for SSR 16-3p; advising, "This SSR will remain in effect until we publish a notice in the Federal Register that rescinds it, or we publish a new SSR that replaces or modifies it.").

Nonetheless, I agree with the commissioner that the error is harmless.

As the plaintiff's counsel emphasized at oral argument, in adopting SSR 16-3p, the commissioner "eliminat[ed] the use of the term 'credibility' from [her] sub-regulatory policy" because her "regulations do not use this term." SSR 16-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 665. She "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character[,]" *id.*, noting, "In evaluating an individual's symptoms, [ALJs] will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation[,]" *id.* at 674.[3]

---

Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462 (Oct. 25, 2017).

[3] The regulations to which the commissioner alluded prescribe a two-step process for evaluating the intensity, persistence, and limiting effects of a claimant's alleged symptoms. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c) (providing that an ALJ must first determine whether a claimant suffers from a "medically determinable impairment that could reasonably be expected to produce [his or her] symptoms, such as pain[,]" and, if so, evaluate the "intensity

In deeming the plaintiff's subjective allegations only partially "credible" because "she was not entirely forthcoming at the hearing when asked about substance abuse issues[,]" Record at 19, 22, the ALJ made precisely the type of assessment of a claimant's overall character or truthfulness prohibited by SSR 16-3p.

Nevertheless, the ALJ offered additional reasons for her assessment of the plaintiff's subjective allegations. For the reasons discussed below, those reasons pass muster pursuant to SSR 16-3p, notwithstanding the plaintiff's arguments to the contrary. The ALJ's analysis, accordingly, survives scrutiny pursuant to the applicable deferential standard of review. *See, e.g.*, *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *Flood v. Colvin*, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016) (even assuming that ALJ erred in considering claimant's drug-seeking behavior in assessing his credibility, "any error would be harmless because substantial evidence of record supports the ALJ's credibility determination").

Those additional reasons are as follows:

<u>Objective medical evidence</u>. The ALJ found that "the record as a whole does not support [the plaintiff's] statements of disabling anxiety." Record at 23.

The plaintiff points out that, pursuant to SSR 16-3p, lack of substantiation by the objective medical evidence, on its own, is insufficient to justify the ALJ's findings. *See* Statement of Errors at 6; SSR 16-3p at 669 (An ALJ may "not disregard an individual's statements about the intensity,

---

and persistence" of the claimant's symptoms to "determin[e] the extent to which [his or her] symptoms limit [his or her] capacity for work").

6

persistence, and limiting effects of symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.") (footnote omitted) (emphasis added). Yet, the ALJ's assessment of the plaintiff's subjective symptoms was not based "solely" on the lack of corroborating medical evidence. *See* Record at 22-23. She, thus, did not err in relying in part on lack of substantiation for the plaintiff's allegations in the medical record.

Indeed, as the commissioner observes, *see* Opposition at 9, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record[,]" SSR 16-3p at 668. ALJs are further directed to consider "report[s] of minimal or negative findings or inconsistencies in the objective medical evidence . . . in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at 669. The ALJ did just that, noting that the plaintiff's medical records were replete with "unremarkable" and "normal" physical and mental exams. Record at 20-22.

<u>Failure to follow medical advice regarding treatment</u>. The ALJ found that the plaintiff had "not followed medical advice regarding the appropriate use of medication, or counseling to address her mood issues[,]" noting that she had "claim[ed] that she [could not] afford counseling, but . . . ha[d] been able to continue to seek medication for her anxiety and chronic pain." Record at 22.

The plaintiff contends that this finding runs afoul of the dictate of SSR 16-3p that an ALJ "may 'not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.'" Statement of Errors at 6-7 (quoting SSR 16-3p at 673). She adds that SSR 16-3p specifically indicates that an inability to afford treatment and

7

lack of access to free or low-cost services should be considered in evaluating a claimant's reasons for not seeking treatment consistent with the degree of his or her complaints. *See id*. at 7; SSR 16-3p at 673. Finally, at oral argument, the plaintiff's counsel posited that his client's ability to afford certain types of treatment did not necessarily mean that she could afford other types.

However, as the commissioner rejoins, the ALJ "expressly acknowledg[ed] [the p]laintiff's reports that she could not afford counseling[,]" and "reasonably considered the evidence of her doctor's appointments showing that 'she ha[d] been able to continue to seek medication for her anxiety and chronic pain[,]'" as well as "treatment notes from September 2013, in which [the p]laintiff disavowed an interest in counseling[.]" Opposition at 10-11 (citing or quoting Record at 18, 21-22, 1140). In so doing, the ALJ complied with SSR 16-3p's directive to "explain how [she] considered the [plaintiff]'s reasons [for not pursuing treatment] in [her] evaluation of the [plaintiff]'s symptoms." SSR 16-3p at 674.

<u>Daily activities</u>. The ALJ found:

> While [the plaintiff] states that she stays home a lot and does not like to go out, she still goes out with friends, cuts hair, shops as needed, attends appointments and drives herself around her community. She lives alone and does not require any assistance with leaving her home. She has never been agoraphobic. While she may have some limitations affecting her ability to work, the record as a whole does not support her statements of disabling anxiety.

Record at 22-23. The plaintiff argues that "[t]he ability to perform the activities cited by the ALJ on an occasional basis is not necessarily inconsistent with an inability to sustain any substantial gainful activity." Statement of Errors at 6.

As the commissioner observes, *see* Opposition at 9-10, this court has held that, "while a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing the credibility of a claimant's allegations[,]" *Rucker v.*

8

*Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted). The holding in *Rucker*, aside from its reference to the term "credibility," is consistent with SSR 16-3p and the commissioner's regulations. *See* SSR 16-3p at 671 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ] will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3). These factors include . . . [d]aily activities[.]"). The ALJ permissibly considered the plaintiff's activities of daily living as a factor in the subjective symptom evaluation, and substantial evidence supports her finding that those activities were inconsistent with her allegation that her symptoms precluded her from engaging in any substantial gainful activity.

The plaintiff finally argues that the ALJ erred in failing to heed the dictate of SSR 16-3p that she "explain which of [the plaintiff's] symptoms [she] found consistent or inconsistent with the evidence in [the plaintiff's] record and how [her] evaluation of [those] symptoms led to [her] conclusions." Statement of Errors at 6; SSR 16-3p at 672. SSR 16-3p further provides:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p at 674.

The commissioner rejoins that "the ALJ explicitly summarized [the p]laintiff's alleged symptoms and indicated that she discounted all reports of symptoms more limiting than the assessed RFC." Opposition at 11-12. She adds that, even assuming error, remand would amount to an empty exercise because the plaintiff has failed "to identify any symptom and corresponding

limitation that she believes should have been included in the RFC, rendering her claim that the ALJ erred in evaluating her symptoms at most an allegation of harmless error." *Id*. at 12.

I agree that any error is harmless. As the commissioner observes, see *id*. at 2-3, 12, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also, e.g., Keefe v. Astrue*, Civil No. 09-116-B-W, 2009 WL 5216059, at *3 (D. Me. Dec. 29, 2009) (rec. dec. *aff'd* Jan. 19, 2010) ("Even if the [ALJ] had erred in [failing to find the plaintiff's ankle injury a severe impairment], any such error was harmless in the absence of a showing that a finding that the ankle injury was a severe impairment would necessarily have altered the [ALJ's] conclusions at Steps 4 and 5 of the sequential evaluation process.").

The plaintiff fails to demonstrate that a fuller explication by the ALJ would have led to a different outcome here, rendering any error harmless.

### B. Failure To Find Medically-Determinable Impairment of Fibromyalgia

The plaintiff also contends the ALJ erred in failing to find her fibromyalgia a medically-determinable impairment, ignoring diagnoses of that condition made by Charles D. Radis, D.O., and John Pier, M.D., in 2004 and 2006, respectively. *See* Statement of Errors at 7-9; Record at 677-80. She argues that the error was not harmless because the lack of a medically-determinable fibromyalgia impairment was "the primary basis" for the ALJ's decision to accord little weight to an outcome-determinative opinion of treating physician Jennifer Friedman, M.D. *See* Statement of Errors at 8.[4] She adds that the ALJ gave scant reasons for giving "evidentiary weight," and thus greater weight, to the opinions of agency nonexamining consultants J.H. Hall, M.D., and Donald

---

[4] Dr. Friedman indicated that the plaintiff could not perform even sedentary-level work, would need frequent breaks, and would be absent from work more than four days a month due to her chronic pain. *See* Record at 22.

10

Trumbull, M.D., neither of whom appeared to have addressed or considered the Radis and Pier records. *Id*. at 8-9; *see also* Record at 61-65, 92-95.

The commissioner counters that (i) substantial evidence supports the ALJ's finding that the plaintiff did not have a medically-determinable impairment of fibromyalgia, and (ii) the ALJ properly discounted Dr. Friedman's opinion. *See* Opposition at 12-20. I agree.

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." Social Security Ruling 96-4p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2017) ("SSR 96-4p"), at 118.

"It is the plaintiff's burden to produce sufficient evidence to allow the commissioner to reach a conclusion at Step 2; the absence of evidence provides support for a conclusion adverse to the plaintiff at this point in the sequential evaluation process." *Coffin v. Astrue*, Civil No. 09-487-P-S, 2010 WL 3952865, at *2 (D. Me. Oct. 6, 2010) (rec. dec., *aff'd* Oct. 27, 2010).

Social Security Ruling 12-2p ("SSR 12-2p"), which pertains to fibromyalgia, provides, in relevant part:

> Generally, a person can establish that he or she has an MDI [medically-determinable impairment] of FM [fibromyalgia] by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone.
>
> ***
>
> We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. [setting forth the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia] or section II.B. [setting forth the 2010 ACR Preliminary Diagnostic Criteria], and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.

11

SSR 12-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 459-60 (footnote omitted).

The 1990 criteria require a showing of (i) "[a] history of widespread pain . . . that has persisted (or that persisted) for at least 3 months[,]" (ii) "[a]t least 11 positive tender points on physical examination" that "must be found bilaterally (on the left and right sides of the body) and both above and below the waist" in 18 specified tender point sites, and (iii) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.* at 460-61.

The 2010 criteria require a showing of (i) "[a] history of widespread pain[,]" (ii) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome[,]" and (iii) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded[.]" *Id.* at 461 (footnotes omitted).

The ALJ found that the plaintiff did not suffer from a medically-determinable impairment of fibromyalgia, explaining:

> The [plaintiff] testified that she has fibromyalgia and described numerous aches and pains affecting her neck, back, arms, legs, hands and feet. The record, however, contains no reliable diagnosis of fibromyalgia and all physical examinations have been normal, except for subjective reports of tenderness. The [plaintiff] saw a rheumatologist in December 2015 who noted only chronic pain and no evidence of any inflammatory arthritis. He did not recommend *any* treatment other than good sleep, regular exercise and other self-care modalities. While he did note numerous tender points on exam, he did not identify them with sufficient specificity to meet the criteria of Social Security Ruling 12-2p. Similarly, consultative medical examiner Dr. Medrano [Renato Medrano, M.D.] found absolutely no abnormalities on exam and assigned no work-related restrictions at all. The record is replete with normal exams, despite the [plaintiff]'s allegations of ongoing pain and need for medication. For these reasons, the undersigned finds no basis upon which to find that fibromyalgia is established as a medically determinable impairment in this case.

Record at 15 (citations omitted) (emphasis in original).

The plaintiff contends that the ALJ should have found that she had a medically-determinable impairment of fibromyalgia based on the diagnoses of Drs. Radis and Pier and a December 2014 examination by rheumatologist Marc L. Miller, M.D., whom she asserts adopted the fibromyalgia diagnosis of Dr. Radis, of the same practice. *See* Statement of Errors at 8.

In 2004, Dr. Radis examined the plaintiff and opined that she had "a soft tissue pain syndrome that is consistent with fibromyalgia syndrome[,]" adding that she had "chronic, non-restorative sleep, recurrent headaches, normal laboratory studies and a physical exam that is significant only for soft tissue tenderness." Record at 677. Dr. Radis further noted:

> On exam, she has moderate tenderness at the right lateral epicondyle but also at the left lateral epicondyle. Shoulders have aching at the limits of normal motion, no rotator cuff weakness or AC [acromioclavicular joint] discomfort. More of her pain is in the trapezius, rhomboid, and paracervical muscles. Normal rotation and side bending in the cervical spine but it's painful to palpation. Elsewhere, the lateral hips, paraspinal muscles of the lower back and medial knees are tender.

*Id.* at 678.

In 2006, Dr. Pier examined the plaintiff, opining that she had "[i]ntermittent right C7 radicular symptoms, consistent with acute HNP [herniated nucleus pulposis], superimposed on fibromyalgia-type pain complaints." *Id.* at 680. He noted on physical examination that the plaintiff had "palpatory tenderness in the cervical paraspinals[,]" a "more significant discomfort over the medial border of the right scapula[,]" and "tender points also in the superior trapezius, 2nd costochondral, and hips, consistent with fibromyalgia-type pain." *Id.*

As the commissioner observes, the plaintiff has not advanced any argument "that the diagnoses from Drs. Radis and Pier were based on findings satisfying SSR 12-2p." Opposition at 15. SSR 12-2p makes clear that a finding of a medically-determinable impairment of fibromyalgia cannot be based on "the physician's diagnosis alone." SSR 12-2p at 459. Nor is it apparent on

13

the face of the Radis and Pier records that the findings therein satisfy the 1990 or 2010 ACR criteria for fibromyalgia.

At oral argument, the plaintiff's counsel contended that the onus was on the ALJ to evaluate the Pier and Radis records and make an explicit determination whether they did or did not satisfy the requirements of SSR 12-2p. However, any error in the ALJ's failure to address the Radis and Pier records is harmless. She noted that the record as a whole contained "no reliable diagnosis of fibromyalgia[,]" that "all physical examinations ha[d] been normal" except for "subjective reports of tenderness[,]" and that Dr. Miller had noted only chronic pain and failed to identify tender points with sufficient specificity to permit a conclusion that the plaintiff had a medically-determinable impairment of fibromyalgia pursuant to SSR 12-2p. *See* Record at 15.

Nothing in the Miller record indicates that Dr. Miller adopted Dr. Radis's diagnosis of fibromyalgia. *See id*. at 1201-02. While Dr. Miller noted, in recounting the plaintiff's history, that she "had had the diagnosis of fibromyalgia for many years" and had been seen by Dr. Radis, his diagnosis, or "impression," was "chronic pain syndrome without evidence of a systemic inflammatory process." *Id*. at 1201.

In addition, Drs. Hall and Trumbull, whose opinions the ALJ gave evidentiary weight, *see id*. at 23, found that, although the plaintiff had longstanding, variable pain complaints with diagnoses of fibromyalgia in the past, there were "never significant objective findings[,]" *id*. at 65, 95. Dr. Trumbull added that there were no examinations in the file, including the Miller note, that clinically confirmed fibromyalgia by ACR/CDC criteria. *See id*. at 95.

Against this backdrop, the plaintiff bore the burden of demonstrating that the ALJ erred in concluding that there was no reliable diagnosis of fibromyalgia of record. She fails to do so.

14

In the absence of a showing that the ALJ erred in finding no medically-determinable impairment of fibromyalgia, she cannot be said to have erred in according little weight to the Friedman opinion primarily on that basis or in according greater weight to the opinions of Drs. Hall and Trumbull despite their apparent lack of access to the Radis and Pier records.[5]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of June, 2018.

                                                  /s/ John H. Rich III
                                                  John H. Rich III
                                                  United States Magistrate Judge

---

[5] In any event, to the extent that the plaintiff separately challenges the ALJ's decision to accord little weight to the Friedman opinion, *see* Statement of Errors at 8-9, the ALJ identified several good reasons for doing so, including that the limitations described therein were not corroborated by any examinations in treatment records dating back to 1996, Dr. Friedman was not a specialist in orthopedics, rheumatology, physiatry, or any other area of medicine related to the treatment of musculoskeletal disorders or chronic pain, and Dr. Friedman's opinion was conclusory and against the weight of the record as a whole, *see* Record at 22; *see also, e.g.*, 20 C.F.R. §§404.1527(c)(3)-(5), 416.927(c)(3)-(5) (commissioner generally will give more weight to medical source opinions that are better supported and explained, consistent with record as a whole, and offered by a specialist about medical issues related to his or her area of specialty); *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("lack of support and inconsistency with other substantial evidence of record" among good reasons for affording treating source opinion little or no weight).